MICHAEL BAILEY
United States Attorney
District of Arizona
RAQUEL ARELLANO
CHRISTINE A. MELTON
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email:raquel.arellano@usdoj.gov
Email: christine.melton@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR18-00263-TUC-JGZ(JR) |
| Plaintiff, | |
| vs. | **GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT TWO 911 CALLS** |
| Robert Francis Krebs, | |
| Defendant. | |

Now comes the United States of America, by and through its attorneys undersigned, and respectfully submits the following motion *in limine* to admit two separate 911 emergency operator calls made by three witnesses in this case.[1] This motion is supported by the attached memorandum of points and authorities.

---

[1] The government certifies that it has met and conferred with the counsel for the defendant and the parties could not reach an agreement as to the admissibility of this evidence.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  RELEVANT FACTS

On January 12, 2018, the defendant entered the Pyramid Federal Credit Union on Oracle Road across from the Tucson Mall.  He had carefully a planned how and when to approach the tellers, threaten them with a simulated firearm, and retreat from the credit union.  By the time he arrived at the credit union, he had already placed his getaway plan in motion.

When the defendant entered the credit union, he quickly approached A.M., a teller. The defendant was wearing a shoulder bag, from which he retrieved another, smaller bag, and placed it on the counter.  The defendant then reached back into the shoulder bag and pulled out the simulated firearm, which looked strikingly similar to a semi-automatic handgun.  The defendant held the gun low, on the counter, pointed at A.M., and he demanded cash.  A.M. complied.  Immediately after the defendant bagged the cash, he moved to the next teller window, staffed by K.A.  The defendant still had the gun in his hand, and he again pointed it at the teller and demanded money.  K.A. also complied. After the defendant received the money, he calmly and casually exited the bank, and walked to the Tucson Mall, where he changed clothes and loitered for several hours.[2]

Unbeknownst to the defendant, a bank employee, C.V., was in the credit union break room, which is equipped with television that streams live footage of the teller stations. C.V. was able to decipher that a robbery was in progress, as he saw the teller filling the defendant's bag with money.  C.V. also observed that the alarm had been activated.  C.V. called 9-1-1, and reported what he was observing as he was observing it.  He provided the address, asked for "units," and stated that he was watching the robbery suspect walk

---

[2] During a subsequent interview with the FBI, the defendant gave a precise account of his actions before, during, and after the robbery, much of which was also observed and reported by the witnesses at the bank.

- 2 -

through the parking lot toward the mall. C.V. gave a description of the suspect, including physical characteristics, clothing, and his shoulder bag, and gave real-time directions as to where the suspect was and which direction he was going. C.V. maintained a visual of the defendant through the majority of the phone call, until the defendant reached the mall parking lot, and C.V. was able to pinpoint the store which the defendant approached to enter the mall. Throughout the duration of the call, C.V. can be heard exhaling vigorously. The phone call lasted for approximately four (4) minutes, and ended once C.V. lost visual of the suspect.

Simultaneously, the bank manager, C.C., called 9-1-1. She facilitated the call for K.A., who had reported the robbery to her, and was too distraught to make the call herself. C.C. indicated that the teller was "shaking and can't speak," as she provided the introduction to the operator. C.C. then turned the call over to K.A.. As she did so, she told K.A. "just breathe" to help her calm down and take the call. C.C. later reported that K.A. had collapsed on the floor after reporting the robbery. K.A. was able to calm down sufficiently to give a description of the event and the defendant.

## II.    LAW AND ARGUMENT

Statements made out-of-court which are introduced at trial to prove the truth of the matter asserted are hearsay, and may not be admitted unless they satisfy a hearsay exception. (Fed. R. Evid. 801, 803.) The government respectfully requests a ruling that these two separate 911 emergency operator calls are admissible in its case-in-chief, as they fall under the Excited Utterance, Present Sense Impression, and Then Existing Mental, Emotional or Physical Condition hearsay exceptions delineated under Federal Rule of Evidence 803.

### 1. The 911 call made by C.V. is admissible under the hearsay exceptions of present sense impression and excited utterance.

#### a. Present Sense Impression

C.V.'s 911 call is admissible under the hearsay exception of present sense impression. (Fed. R. Evid. 803(1)). A statement satisfies this exception where it is made

"describing or explaining an event or condition, made while or immediately after the declarant perceived it." Id.  The Ninth Circuit has identified three factors to consider when evaluating whether a statement fits within this exception: (1) contemporaneousness; (2) chance for reflection; and (3) relevance.  *United States v. Feng*, 25 Fed. Appx. 635, 643 (9th Cir. 2002) (citing *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987).  The Ninth Circuit differentiates between contemporaneity and simultaneousness, as a slight lapse in time is not only allowable, but expected.  (*See Bemis,* 45 F.3d at 1372) (noting that an out-of-court statement must be "nearly" contemporaneous with the incident described and made with little chance for reflection under either the present sense impression or the excited utterance tests.) (*See also* Fed. R. Crim. P. 803, advisory committee note: "in many, if not most, instances, precise contemporaneity is not possible, and hence a slight lapse is allowable.").

Here, the statements are clearly a present sense impression.  C.V. made the 911 call while he was watching the robbery occur on the break-room television.  He maintained contact with the operator throughout the robbery and well into the defendant's getaway, providing a play-by-play of the defendant's actions.  The circumstances here not only meet the standard for contemporaneity, but they exceed it, as the information was actually being relayed simultaneously with the observation.  C.V. would thus have had no chance to reflect upon what he was reporting.  Finally, the call is highly relevant as it describes the robbery as it occurred and further corroborates other evidence regarding the defendant's actions afterward.

### b.  Excited Utterance

C.V.'s 911 call is also an example of an exited utterance.  (Fed. R. Evid. 803(2)).  The Ninth Circuit recognizes that this exception allows admission of a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  *United States v. Alarcon-Simi*, 300 F.3d 1172, 1175-76 (9th Cir. 2002).  A central inquiry is whether the statement was made without opportunity for reflective thought. Id*.; Winzer v Hall*, 494 F.3d 1192, 1197-98 (9th Cir. 2007).  As with

- 4 -

the present sense impression exception, the statement need not be instantaneous with the event in question. "[T]he standard of measurement is the duration of the state of excitement." *See* Fed. R. Evid. 803, advisory committee note.

Here, C.V. made the call while experiencing the stress and excitement of watching a robbery in progress on the other side of the door to the breakroom, where he was. C.V.'s breathing is clearly audible throughout the phone call and he anxiously requests that the police send "units." Furthermore, the statements in the call contained information directly related to the crime charged, including a description of the defendant and his conduct. Additionally, as was stated above, C.V. made the statements in the phone call at the same time as he was personally observing the events. The simultaneousness of the statement C.V.'s observations establish that C.V. had no time to reflect on the information he relayed.

2. **The 911 call made by C.C. and K.A. is admissible pursuant to the hearsay exceptions of excited utterance, present sense impression, and then-existing mental, emotional, or physical condition.**

   a. **Excited Utterance**

As with the call made by C.V., the call made by C.C. and K.A. falls within the excited utterance exception to the hearsay rule. (Fed. R. Evid. 803(2)). The statements made by C.C., and in particular K.A., to the 911 operator unmistakably meet the standard. The call was placed within moments of the defendant committing the robbery. C.C. had just witnessed the defendant enter and exit the credit union, not knowing what transpired in between. C.C. placed the call immediately upon learning of the robbery, and hearing that the defendant had a weapon. C.C. also relates that she had learned that another employee, C.V. (supra) was watching as the defendant escaped from the scene. These circumstances are a melting pot of anxiety and stress, all caused by the robbery.

C.C. introduces the reason for the call, and describes K.A.'s distraught condition. At the very beginning of the call, C.C. indicates K.A. is "shaking and can't speak." As C.C. turns the phone over to her, C.C. comforts K.A. as she says "just breathe," which in

turn helps K.A. calm down enough to talk to the operator.  When  K.A. finally speaks, she is audibly shaken up.   Having had a close-range gun pointed at her just minutes before, K.A. was clearly under the stress of excitement when she recounted the event for the operator.

### b. Present Sense Impression

The beginning of this call also falls within the present sense impression exception. (Fed. R. Evid. 803(1)).  C.C.'s initial comments includes her observation of K.A.'s mental and emotional condition.  She was with K.A. at the time of the call, as the phone was passed back and forth between the two.  C.C.'s report of K.A. "shaking" to the point that she "can't speak" occurred as she was observing this.  C.C. then turned the phone over to K.A., after telling her to "just breathe" as she was in obvious distress.

### c. Then Existing Mental, Emotional, or Physical Condition

Another exception to the hearsay rule that applies to the statement made by C.C. and K.A. is then-existing mental, emotional, or physical condition. (Fed. R. Evid. 803(3)). This exception includes state of mind, as well as emotion, sensation, or physical condition (such as mental feeling, pain, and health).  Id.  The foundational requirements mirror those of the exceptions listed *supra*: contemporaneousness, reflection, and relevance. *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980), *cert. denied*, 449 U.S. 1016, overruled on other grounds, *United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir.1984).  The Court recognized that there is probative value in statements that were made with such little chance for reflection, as it undercuts the possibility of misrepresentation, which in turn demonstrates reliability. Id.

As previously demonstrated, the statements made on this call satisfy all foundational requirements of the rule. The arguments regarding contemporaneity and lack of reflection noted for the excited utterance exception apply equally here.  Further, the relevance is exceptional, as K.A.'s state of mind is directly related to elements of the crime charged: force and intimidation.  The inability for K.A. to remain calm after this experience was the

- 6 -

direct result of the defendant's conduct. That she collapsed on the floor corroborates the fright in her voice and the difficulty she had calming down before and during the call. The 911 call containing the statements by C.C. and K.A. is the epitome of this exception.

### 3. **Both 911 calls comport with the balancing requirement of Federal Rule of Evidence 403.**

Under Rule 403, relevant evidence may be excluded only where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Unfair prejudice results when the evidence has an "an undue tendency to suggest a decision on an improper basis," such as an emotional one. *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015). Unfair prejudice has been further identified where the "evidence [is] designed to elicit a response from the jurors that is not justified by the evidence." *United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998) (quoting omitted.)). However, unfair prejudice does not exist simply because the evidence is material and inculpatory. *United States v. Fox*, 627 Fed. Appx. 608 (9th Cir. 2015) (citing *United States v. Rizk*, 660 F.3d 1125, 1133 (9th Cir. 2011) (external citations omitted). Rather, a defendant must articulate specific bases for exclusion, and only where one or more of those bases substantially outweigh the probative value is exclusion appropriate. Id.

Additionally, Rule 403's cumulative evidence provision does not prohibit the introduction of similar evidence; rather, it merely permits courts to exclude like evidence where it has little incremental value. *United States v. Miguel*, 87 Fed. Appx. 67, 68 (9th Cir. 2004). Indeed, 911 calls can be admissible as evidence, even where they accompany testimony by the declarants, where their content is not unduly prejudicial. *United States v. Lloyd*, 462 F.3d 510 (6th Cir. 2006). In *Lloyd*, the Sixth Circuit upheld the admission of a 911 tape containing statements made by bank employees about the description of the man who had just robbed them and about the direction he had headed after the robbery, even though the declarants had also testified at trial. Id. at 516. The Sixth Circuit reasoned that,

although "the probative value of the 911 tape [was] lessened by the bank employees' testimony to the same information," "the only danger of unfair prejudice [the defendant could] point to is that the tape "revealed the highly emotional state" of the bank employees at the time of the robbery." *Id.* at 516-17. There was nothing about the *content* of the information on the tape that created a danger of unfair prejudice.  While the defendant argued that the emotion in the employees' voices on the recording would tend to incense and inflame the jury, the court rejected that argument, instead holding that any danger of unfair prejudice was minimal.  Id.

The case at bar is analogous to *Lloyd*, as the calls contain much of the same information.  The declarants here describe the defendant, relay what they experienced during the robbery, provide a description, and identify where he went after fleeing the credit union, similarly to the calls in *Lloyd.*  The calls are highly probative as to multiple elements of the crime, as they assist in identifying the defendant, and clearly demonstrate the intimidating effect his actions had on the victims.  Yet, while the emotion can be understood by listening to the recording, it is not so extreme as to incite or inflame the jury, or cause the jury to make a finding on an improper basis.  Thus, the probative value outweighs any prejudicial impact.

### 4. **Admission of the recordings will not violate the Confrontation Clause.**

The Confrontation Clause, embedded in the Sixth Amendment of the United States Constitution, provides that a criminal defendant maintains the right to confront the witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 42 (2004.)  This is often achieved in the form of cross examination of such witnesses at trial. *Id.* at 42-50.  Here, the government intends to call all three of the declarants who can be heard on the 911 recordings as witnesses at trial.  The defendant will have an opportunity to cross-examine them regarding their live testimony and the statements they made to the operator. Thus, the defendant will have an opportunity to confront his accusers and the Sixth Amendment is satisfied.

### III. CONCLUSION

There are two layers of analysis that must be conducted with regard to the proposed calls. First, as the statements in the recordings were made out-of-court, and will be offered to prove the truth of the matter asserted, at least one hearsay exception must apply. In this case, the government has presented two exceptions applicable to the call made by C.V., and three exceptions for the call made by C.C. and K.A. Both recordings were made contemporaneously, with little (or no) chance for reflection, and both are exceptionally relevant to the elements of the crime charged. Second, the limits of the Confrontation Clause do not apply, as the declarants will be present and available for cross-examination. The recordings are both admissible under the law, and are material and probative. For these reasons, the government respectfully requests that the Court allow the government to introduce them during its case-in-chief at trial.

Respectfully submitted this 30th day of January, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Raquel Arellano*

Raquel Arellano
Assistant U.S. Attorney

*s/ Christine A. Melton*

Christine A. Melton
Assistant U.S. Attorney

COPY of the foregoing served electronically
or by other means this 30th day of January, 2020, to:

J. Leonardo Costales, Esq.
Gregory Berger, Esq.
Attorneys for the Defendant

- 9 -