GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
RAQUEL ARELLANO
Assistant U.S. Attorney
Arizona State Bar No. 011796
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: raquel.arellano@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 18-00263-TUC-JGZ (JR) |
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM |
| Robert Francis Krebs, | |
| Defendant. | |

Now comes the United States of America, by and through its undersigned attorneys, and hereby submits this Sentencing Memorandum for the Court's consideration.

The United States concurs with the U.S. Probation Department's calculations in the Presentence Investigation Report (PSR) filed on August 10, 2021 (Doc 206) regarding a Total Offense Level of 34, Criminal History Category VI, and Guideline Provisions of 262 to 300 months incarceration. The United States concurs with the U.S. Probation Department's recommendation of 262 months' incarceration to be followed by a term of supervised release of five years. The applicable guideline range accounts for the defendant's conduct, prior criminal history including violent felony convictions, his acceptance of responsibility, and his placement in Criminal History Category VI. Defendant has been in federal custody since January 23, 2018. Defendant filed objections to the PSR and those have been addressed in separate pleadings. The most significant

objection pertains to whether the defendant qualifies as a career offender for an enhancement and placement in base offense level 34 and Criminal History Category VI. Should the Court sustain this objection, then the total offense level would be 23 or 25 and the Criminal History Category would be IV. The total offense level would be 25 if the Court denies the defendant's objection regarding acceptance of responsibility levels not being granted. The total offense level would be 23 if the Court sustains the defendant's objection and deducts two levels for acceptance of responsibility. The resulting ranges would be: 84 to 105 or 70 to 87 months, respectively.

Defendant is now before the Court for his sixth felony conviction. Defendant's criminal history extends over 50 years beginning with serving a prison term of three (3) years for committing bank embezzlement in 1966 in Chicago, Illinois. His prior serious offenses include threatened use of violence and use of weapons to intimidate victims. Defendant committed the instant offense while on absconder status from probation in Florida after having served a term of imprisonment for violent offenses including kidnapping (later changed to false imprisonment) and armed robbery in connection with an armed bank robbery. A petition to revoke probation has been filed in Florida. (PSR ¶ 36.) Florida seeks to pursue violation proceedings against the defendant following sentencing in the instant offense. Defendant has egregious prior violent criminal convictions involving victims as depicted in Paragraphs 35 and 36 of the PSR. In the 1988-Armed Robbery conviction reflected in Paragraph 35 of the PSR, the defendant used a handgun to successfully escape from the custody of sheriff's deputies with the help of an accomplice. Pima County Sheriff deputies were disarmed of their weapons while at a polygraph examination office. The deputies and two office employees were ordered from the reception area to a back office where their hands and feet were bound, and their mouths taped shut. Defendant, with the aid of his accomplice, then escaped from custody. Defendant was sentenced to 28 years' prison for that conviction.

Paragraph 36 notes a prior violent bank robbery committed in Sanford, Florida. Defendant handcuffed and tied two bank employees and placed them in the vault. The

Florida PSR for that offense notes that the defendant stated if he were released, he would do the same thing again within 15 minutes. Psychiatrists also previously called his behavior sociopathic.

Defendant's previous lengthy terms of incarceration did not rehabilitate him. Instead, within six months of being released from prison in 2017, and even at his advanced age, the defendant committed the instant offense with the use of a simulated weapon and threatened use of violence to intimidate the bank teller victims.

In the defendant's lengthy post-*Miranda* statement to law enforcement (which was admitted as evidence at trial) the defendant did not appear remorseful for his criminal conduct and admitted he wanted to get caught and go back to the prison system. In his statement, he laid out his meticulous plan of surveying various banks to determine which one would be the easiest one to rob. He observed which banks had female versus male tellers. He mentioned that he had gone to the Wal-Mart at El Con Mall days before the robbery to purchase a BB gun. He mentioned his pre-set getaway plan of going to the Tucson Mall shopping center across from the bank following the robbery wherein he would retrieve his wheelchair that he had stashed at the Sears store. He mentioned he would remove his outer clothing to avoid getting caught. Videotapes introduced at trial taken from the Sears store and the Tucson Mall, depict the defendant stashing a wheelchair before the bank robbery and then retrieving it after the robbery. Videos depict him pushing a wheelchair, wearing different clothing after emerging from a Sears bathroom, and roaming the mall for hours while seated in the wheelchair. Paragraphs 10 and 11 of the PSR summarize portions of the defendant's post-arrest statements. Paragraphs 1 through 12 outline the Offense Conduct of the offense. The total amount stolen from the bank was $8,384.84. (PSR ¶ 6.)

Defendant is a career offender and a menace to society. Defendant's advanced 82 years of age and limited physical condition did not deter him from committing a bank robbery with the use of a simulated weapon. Videotape from the bank show him walking in and out of the bank. His physical condition did not hinder him from crossing a major

street (Oracle Rd.) during a busy afternoon on a weekday to slip inside the Tucson Mall shopping center and spend hours inside in hopes of avoiding apprehension. Defendant was proud of his criminal history in that he bragged to a motel clerk on several occasions by showing her newspaper clippings of prior offenses which mentioned his name, as reflected in Paragraph 8 of the PSR.

Restitution is sought to reimburse the insurance company that paid the victim bank for its losses: CUNA Mutual Group in the amount of $8,385. (PSR ¶ 16.) The restitution should be sent to CUMIS Insurance Society, Inc., Claim B1082442, P.O. Box 1221, Madison, WI, 53701-1221. This insurance company paid the victim bank $3,385 for the loss incurred in the robbery. The victim bank had an insurance deductible of $5,000. The amount taken during the robbery was $8,384.84. Police officers retrieved $6,224 in cash and $1,000 worth of Pre-Paid Visa cards among the defendant's possessions at the time of arrest. (PSR ¶ 9.) The money and Visa cards are still in the FBI evidence locker. As such, the insurance company's restitution amount should be $8,385, minus the $6,224 in cash and the $1,000 in Pre-Paid Visa cards. Perhaps the FBI can be ordered to release the cash and Pre-Paid Visa cards to the insurance company toward the restitution amount. The insurance company will then pay the victim bank the $5,000 insurance deductible.

One of the bank teller victims, A.M., would like to address the Court at sentencing. The second bank teller victim, K.S.A., may be seeking restitution. She submitted a Victim Impact Statement. Paragraph 14 of the PSR notes that the victim stated that the trauma of the event created great stress and anxiety. She experiences lingering emotional trauma which took away her ability to do her job correctly. She feels anxious going into a bank. She changed jobs and her residence. She is requesting $5,000 in restitution. The sum is unaccounted for, thus far. She lost several days of work due to the emotional trauma she sustained, and the days lost were unpaid. If the sum continues to be unaccounted for, a restitution hearing may be needed. The United States will seek to obtain as much information regarding this restitution request by the sentencing date and will provide disclosure, if any, to defense counsel.

The recommended sentence of 262 months' imprisonment (the bottom of the guideline range) with a five-year term of supervised release provides punishment for this violent armed bank robbery offense by a career criminal, adequate deterrence to criminal conduct, and provides protection to the community.  The recommended sentence is viewed as sufficient, but not greater than necessary to promote respect for the law while providing just punishment for the offense.  Despite the defendant's age and physical condition, the defendant continues to pose a serious risk to the community and a risk to reoffend.  The United States concurs with the PSR writer that considering the defendant committed the instant offense despite his physical and medical condition, a downward departure pursuant to USSG §5H1.4 is not recommended.

For all the foregoing reasons, the United States respectfully requests that the Court impose the above-recommended sentence of 262 months' imprisonment, with a term of three years of supervised release to follow.  Should the Court sustain either of the defendant's objections, the government recommends a sentence at the top end of the corresponding sentencing guideline ranges for all the reasons mentioned above.

Respectfully submitted this 10th day of August, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*s/Raquel Arellano*

RAQUEL ARELLANO
Assistant U.S. Attorney

Copy of the foregoing served this 10th day of August, 2021, to:

Erin M. Carrillo, Esq.
Attorney for the defendant

Monica Lopez
U.S. Probation Officer